**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| STRYKER CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No._____ |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| STYKER ENDOSCOPE CAMERA SYSTEM ) | |
| DEVELOPMENT AND DESIGN LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND CYBERSQUATTING**

Plaintiff Stryker Corporation, as and for its Complaint against Defendant Styker Endoscope Camera System Development and Design LLC ("Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1.      Stryker Corporation brings this action against Defendant for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq*. ("Count I"); cyberpiracy and cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) ("Count II"); and deceptive trade practices under the corresponding law of the State of Delaware, 6 Del. C. § 2532(a) ("Count III").

**THE PARTIES**

2.      Stryker Corporation is a Michigan corporation with its principal place of business at 1941 Stryker Way, Portage, Michigan 49002.

3.      Defendant is a limited liability company formed under the laws of Delaware and has appointed Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, Delaware 19958, as its agent for service of process.

1

4.      As shown below, Defendant represents on its website that it has a principal place of business at 16192 Coastal Highway, Lewes, Delaware 19958, which is the same address as its registered agent, Harvard Business Services, Inc.



*See* https://styker-endoscopy.com/contact-support/;
https://www.google.com/maps/place/16192+Coastal+Hwy,+Lewes,+DE+19958/

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Stryker Corporation's federal claims under the Lanham Act and Anticybersquatting Consumer Protection Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a).

6.      This Court has supplemental jurisdiction over Stryker Corporation's claim arising under Delaware state law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because that claim is so related to Stryker Corporation's federal claims that it forms a part of the same case or controversy and derives from a common nucleus of operative fact.

7.      This Court has personal jurisdiction over Defendant because Defendant is a limited liability company formed under the laws of Delaware and has appointed Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, Delaware 19958, as its agent for service of process. Since Defendant also represents on its website that the address of its registered agent for service is the address of Defendant's principal place of business, Defendant should reasonably expect its actions to have legal consequences in Delaware.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## FACTUAL ALLEGATIONS

**Stryker Corporation's History and Trademarks**

9.      Stryker Corporation's history dates back to 1941, when Dr. Homer Stryker created The Orthopedic Frame Company to research, develop, and produce medical products that met patient needs not addressed by other existing products at the time. In 1964, the name of The Orthopedic Frame Company was changed to Stryker Corporation.

10.     Today, Stryker Corporation still reflects the patient-based roots on which it was founded. Stryker Corporation is one of the world's leading medical technology companies.

11.     Stryker Corporation currently impacts the lives of more than 150 million patients annually across approximately 75 countries. In 2023, Stryker Corporation's global sales amounted to $20.5 billion, earning it a listing in the S&P 500 index. Stryker Corporation also has an estimated 52,000 employees worldwide.

12.     Stryker Corporation's diverse array of innovative medical products and services includes endoscopy solutions and related imaging solutions such as Stryker Corporation's 1788 Platform for minimally invasive surgery. Related products include surgical camera systems, displays, and media management systems as well as instruments for arthroscopy, laparoscopy, cystoscopy, hysteroscopy, and ureteroscopy. Stryker Corporation has multiple divisions within its company, including a division dedicated entirely to endoscopy equipment and solutions.

13.     As mentioned above, Stryker Corporation's products include a wide array of medical instruments, including, by way of example, the medical power tools shown below, all of which have the mark "STRYKER" affixed thereto:



*See* https://www.stryker.com/us/en/orthopaedic-instruments/products/system-8.html

14.     Stryker Corporation's products are protected by an estimated 12,900 patents. Stryker Corporation also has a strong trademark portfolio covering the Stryker brand and products.

15.     Stryker Corporation owns numerous U.S. federal registrations for the mark STRYKER, alone or in combination with other words and elements ("Stryker's Marks"), including the following:

| Mark | Reg. No. or Serial No. | Reg. Date. | First Use in Commerce |
|------|------------------------|------------|------------------------|
| STRYKER | Reg. No. 730,498 | Apr. 24, 1962 (filed Jul. 21, 1961) | 1942 |
| STRYKER | Reg. No. 1,016,798 | Jul. 29, 1975 (filed Oct. 31, 1974) | 1963 |
| STRYKER | Reg. No. 4,309,596 | Mar. 26, 2013 (filed Mar. 04, 2011) | 2000 |
| STRYKER | Serial No. 97/683,551 (live application) | (filed Nov. 18, 2022) | 1942 |
| stryker | Serial No. 97/684,138 (live application) | (filed Nov. 18, 2022) | At least as early as 2003 |

16.     Stryker's Marks have been used since at least as early as 1942 in connection with its diverse line of medical products and services, including, but not limited to the following, which are identified in the above-listed registrations and applications:

| Mark | Reg. No. or Serial No. | Goods and Services (disclosed on record to the USPTO) |
|------|------------------------|--------------------------------------------------------|
| STRYKER | Reg. No. 730,498 | Overbed frames, Stretchers, Traction frames, Universal hospital beds, Turning frames, Portable cabinets for storing equipment used in applying or removing casts, Casts and padding cutters, Bone and autopsy saws and accessories including vacuum devices for collecting plaster and bone dust, Heels for casts, Cast spreaders, Electrically operated surgical tools and appliances, Tape for skin grafting purposes, Grafting skin cutters, Skin abraders, Devices for |

| Mark | Reg. No. or Serial No. | Goods and Services (disclosed on record to the USPTO) |
|---|---|---|
| | | assisting patients in walking, Splints, Patient-supporting boards and pads for use on operating tables and the like |
| STRYKER | Reg. No. 1,016,798 | Orthotic devices, **Manually operated surgical tools**, **Surgeons' stools**, Gel cushions, Orthopedic tables, Pneumatically operated surgical tools, Micro-pneumatic surgical tools, Surgical instrument tables, Metal implants and prostheses |
| STRYKER | Reg. No. 4,309,596 | Computer software for storing, displaying, managing, organizing, retrieving, browsing, and controlling images, video, animation, musculoskeletal models, and information for education, instruction, counseling and learning in the medical and healthcare fields, and user manuals in electronic forms sold as a unit therewith; **Computer software for use in storing, displaying, managing, organizing, retrieving, browsing, and controlling images, video, animation, musculoskeletal models, and information in the medical and healthcare field**s, and user manuals in electronic form sold as a unit therewith; Computer software for storing, displaying, managing, retrieving, and browsing surgical protocols and techniques, and user manuals in electronic form, sold together as a unit. |
| STRYKER | Serial No. 97/683,551 (live application) | house mark for **medical and surgical devices, instruments and apparatus, and emergency care equipment; a full line of medical and surgical devices, instruments and apparatus, and emergency care equipment; surgical apparatus and instruments; surgical and medical apparatus and instruments for use in orthopedic surgery, general surgery, endovascular surgery, neurovascular surgery and endoscopic surgery;** |

| Mark | Reg. No. or Serial No. | Goods and Services (disclosed on record to the USPTO) |
|---|---|---|
| | | storage carts especially designed for supporting and storing surgical and medical equipment; clothing especially for operating rooms; personal protection equipment for use in surgery, namely, surgical helmets, togas, and hoods worn by medical staff |
| **stryker** | Serial No. 97/684,138 (live application) | house mark for **medical and surgical devices, instruments and apparatus, and emergency care equipment; a full line of medical and surgical devices, instruments and apparatus, and emergency care equipment; surgical apparatus and instruments; surgical and medical apparatus and instruments for use in orthopedic surgery, general surgery, endovascular surgery, neurovascular surgery and <u>endoscopic surgery</u>**; storage carts especially designed for supporting and storing surgical and medical equipment; clothing especially for operating rooms; personal protection equipment for use in surgery, namely, surgical helmets, togas, and hoods worn by medical staff |

17.    The foregoing registrations listed in paragraphs 15-16 above are valid, subsisting, and in full force and effect. Registration Nos. 730,498; 1,016,798; and 4,309,596 are incontestable.

18.    As a result of the extensive sales and promotion of its goods and services under the Stryker Marks, Stryker Corporation has built up highly valuable goodwill in the Stryker Marks, which have become uniquely identified and associated with Stryker Corporation.

19.    Through long and continuous usage and widespread promotion and advertising, the Stryker Marks have become famous among the relevant consuming public.

**Defendant's Unlawful Use of Marks Confusingly Similar to Stryker Corporation's Federally Registered Marks**

20.     Defendant has adopted and continues to use the names "Styker" and "Styker USA" as trade names and trademarks to identify its business, which, according to its website, involves manufacturing advanced technology for various medical applications, specifically including and emphasizing an alleged "wide range of cutting-edge advanced Endoscopy systems," along with gastroenterology, thoracic surgery, pulmonology, minimally invasive surgery, energy systems and instruments, urology, gynecology, ENT (ear, nose, and throat), neurosurgery, and orthopedics.

21.     As shown below, Defendant's "Styker" mark and Stryker's Marks differ by only one letter, "R," and are substantially similar and/or identical in style, visual design, and phonetic sound.

| Stryker Corporation Reg. Nos. 730,498; 1,016,798; and 4,309,596 (First use in commerce date of 1942) | Stryker Corporation Serial No. Serial No. 97/684,138 (Live Application, First use in commerce date of at least as early as 2003) | Infringing "Styker" Mark Used by Defendant |
|---|---|---|
| STRYKER | stryker | styker® |

22.     Not only is Defendant's "Styker" mark substantially similar to Stryker's Marks, but the stylized version of Defendant's "Styker" mark is also nearly identical and/or substantially similar to the stylized version of Stryker's Marks. In that regard, and as shown below, the parties' respective stylized versions feature substantially similar fonts with a curved letter "t" and "y," wherein the foot of each letter curves towards the other.

| Stryker Corporation's Mark<br>Serial No. Serial No. 97/684,138<br>(filed November 18, 2022) | Defendant's "Styker" Mark<br>Serial No. 98/092,900<br>(filed July 19, 2023) |
|---|---|
|  |  |

23.    Defendant has also applied to register in the USPTO its stylized form of the "Styker" mark, shown above, for "endoscopy cameras for medical purposes" and "earpicks incorporating endoscopy cameras for medical purposes" (USPTO Serial No. 98/092,900).

24.    Defendant advertises the "Styker" mark in connection with medical products and services that are substantially similar and/or identical to the medical products and services offered by Stryker Corporation, that is, endoscopy and other medical and surgical products and services. Defendant advertises the "Styker" mark prominently in the United States by way of its website, which now has the domain name <STYKER-ENDOSCOPY.COM>. Defendant's advertising on <STYKER-ENDOSCOPY.COM> includes using the "Styker" mark in connection with its advertised products and services, as well as using the "Styker" mark in catalogues, pictures, videos, and animated infographics for its products and services.

25.    Defendant's website claims and advertises that Defendant is a complete medical endoscope solution provider and a leading innovator in endoscopy systems. Defendant also offers and advertises other medical systems, including surgical telescopes, urethrotomy and

ureterorenoscopy instrument sets, rigid bronchoscope sets, and extensive lines of orthopedic surgery tools. Defendant's orthopedic surgery tools include two lines of orthopedic power tools, the "H Series" and "L Series," as well as an electric power system for orthopedic surgery, a high speed drill, a plaster saw, and an autopsy saw. Defendant's "H Series" power tools, for example, are shown below:



*See* https://stryker-endoscopy.com/product/sternum-saw/

26.     On information and belief, Defendant's parent company is "Platinum HAM Medical." On information and belief, "Platinum HAM Medical" is a United Arab Emirates company with a principal place of business in Dubai, United Arab Emirates. Defendant's products are also promoted in catalogues, pictures, videos, and animated infographics on Platinum HAM Medical's website, <PLATINUM-MEDICAL.COM>. Defendant is listed as a USA-based company on Platinum HAM Medical's website.

27.     On information and belief, Defendant's parent company, Platinum HAM Medical, is owned by "Royal Tech Group." On information and belief, Royal Tech Group is a United Arab Emirates company with places of business in Dubai, United Arab Emirates and Amman, Jordan.

28.     On information and belief, Defendant claims to be a USA-based worldwide company and attends trade shows where it advertises and displays the "Styker" mark. On information and belief, Defendant's parent company claims to sell products in the Iraqi market with plans to expand worldwide. Photographs of Defendant's prominent advertisement of the "Styker" mark in connection with its medical devices at worldwide trade shows appear below:






*See* https://www.youtube.com/channel/UC-y8lCcbXT-53CGGhjOAqzg

**Stryker Corporation Has Previously Taken Action Against Defendant, but Defendant Continues to Intentionally Deceive the Public**

29.     On May 10, 2023, Defendant registered the domain name <STYKERR.COM> through the domain name registrant GoDaddy.com, LLC.

11

30.    On June 26, 2024, Stryker Corporation filed a complaint against Defendant in the arbitration institution known as FORUM ("the Panel") grounded on the Uniform Domain Name Dispute Resolution Policy rules adopted by the Internet Corporation for Assigned Names and Numbers (the "ICANN Dispute"). Stryker Corporation's complaint in the ICANN Dispute sought to stop Defendant from using the domain name <STYKERR.COM>, which was obviously confusingly similar to Stryker's Marks.

31.    The Uniform Domain Name Dispute Resolution Policy rules, applied by the Panel, allow complainants to cancel or transfer a domain name when three requirements are met: 1) the domain name registered by the respondent is identical or confusingly similar to a trademark or service mark in which the complainant has rights; 2) the respondent has no rights or legitimate interest in respect of the domain name; and 3) the domain name has been registered and is being used in bad faith. *See* Paragraph 4(a) of the Uniform Domain Name Dispute Resolution Policy, available at <https://www.icann.org/resources/pages/policy-2024-02-21-en>.

32.    Stryker Corporation asked the Panel to transfer the domain name <STYKERR.COM> to Stryker Corporation because Defendant's domain name was identical or confusingly similar to Stryker Corporation's federally registered trademarks in which Defendant has no rights, and because Defendant's domain name was registered and being used in bad faith.

33.    On July 15, 2024, Atheer Alhaideri ("Defendant's Representative") responded to Stryker Corporation's complaint *pro se* and listed "Platinum HAM Medical Surgical Equipment Trading" as the exclusive authorized representative for the alleged "Styker brand."

34.    Defendant's Representative identified himself as the head of marketing and technical support for Defendant through his company, Platinum HAM Medical Surgical Equipment Trading. Defendant's Representative confirmed that Defendant was a company duly

formed under the laws of the State of Delaware and presented a Certificate of Formation from the Delaware Secretary of State.

35.    Defendant's Representative argued that Stryker Corporation's wide range of products, distinct branding, and visual and phonetic differences between the logos weighed in favor of a finding that Stryker Corporation's and Defendant's marks are not identical or confusingly similar. In a supplemental statement submitted on July 22, 2024, Defendant's Representative specifically recognized that Stryker Corporation has an entire division of its company dedicated to endoscopy.

36.    On July 31, 2024, the Panel issued a decision in favor of Stryker Corporation and ordered that the domain name <STYKERR.COM> be transferred to Stryker Corporation. The Panel ruled that the disputed domain name <STYKERR.COM> was confusingly similar to Stryker's Marks; that Defendant promoted the same goods, endoscopic goods, as Stryker Corporation; that Defendant had no legitimate independent business interest in the domain name; and that Defendant registered and used the domain name in bad faith.

37.    The Panel's finding of confusion and bad faith was partially grounded on a finding that Stryker's Marks are famous in the worldwide medical community because the STRYKER Trademark has been used for 82 years, is protected by multiple trademark registrations, and is used by a company that has about 52,000 employees worldwide and more than $20.5 billion in global sales.

38.    After receiving this decision from the Panel, on August 02, 2024, two days later, Defendant then proceeded to register the domain name <STYKER-ENDOSCOPY.COM>. Defendant continues to use the domain name <STYKER-ENDOSCOPY.COM> and the name

"Stryker" to actively advertise and promote to the relevant trade and public Defendant's medical products and services including, most prominently, endoscopy products.

**Continued Harm to Stryker Corporation**

39.     Defendant's "Stryker" name so closely resembles Stryker's Marks that it is likely to cause confusion, mistake, or deception to the relevant trade and public. Consumers are likely to believe that Defendant and its goods are in some way associated or connected with or approved or authorized by Stryker Corporation, when that is not the case.

40.     Defendant's actions, including continued registration of domain names using the word "Stryker," even after a ruling of bad faith and confusion with Stryker's Marks by the Panel, and continued use of the "Stryker" name on its website in affiliation with the substantially similar and/or identical goods or services offered by Stryker Corporation, indicate that Defendant will continue to infringe on Stryker's Marks and cause confusion, mistake, or deception to the relevant trade and public. Defendant's actions have caused, and will continue to cause, damage and irreparable injury to Stryker Corporation if such actions do not stop immediately.

<u>**COUNT I**</u>
**FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT § 32(1), 15 U.S.C. § 1114(1)**

41.      The allegations of the preceding paragraphs 1 through 40 are realleged and incorporated by reference as if fully set forth herein.

42.     Stryker Corporation owns valid and existing rights in Stryker's Marks. *See* paragraphs 15-16.

43.     Stryker Corporation has continuously used Stryker's Marks in commerce in connection with medical products since 1942. Stryker Corporation has built up a significant

amount of goodwill associated with Stryker's Marks during this time. Stryker's Marks were used in commerce long before Defendant's use of the "Stryker" mark.

44.     Defendant has no rights in Stryker's Marks, nor has Stryker Corporation approved Defendant's use of the "Stryker" mark in connection with Defendant's advertising and/or sales of its products and services.

45.     Defendant's use in commerce of the "Stryker" mark is likely to cause confusion or mistake or to deceive members of the relevant trade and public because the "Stryker" mark and Stryker's Marks differ by only one letter, "R," and are substantially similar and/or identical in style, visual design, and phonetic sound.

46.     Defendant's "Stryker" mark so resembles Stryker's Marks in appearance, sound, connotation, and commercial impression that the use thereof is likely to cause confusion, mistake and deception, and will continue to do so, as to the source, origin, sponsorship, or approval by Stryker Corporation and will injure and damage Stryker Corporation and the goodwill and reputation symbolized by Stryker's Marks.

47.     Stryker Corporation and Defendant offer and advertise substantially similar and/or identical goods and services, such that the trade and public is likely to be confused, mistaken, or deceived, and to assume erroneously that Defendant's goods and services are in some way connected with, licensed by, sponsored by, or affiliated with Stryker Corporation, all to Stryker Corporation's irreparable damage, as well as the public's detriment.

48.     Defendant has continued to use the "Stryker" mark in bad faith after a determination that the word "Styker" is confusingly similar to Stryker's Marks in the ICANN Dispute. Defendant's persistent use of the "Stryker" mark, including in a style which is substantially similar to that used by Stryker Corporation, and Defendant's attempt to register the "Stryker" mark in a

substantially similar font, all despite its knowledge of Stryker's Marks and the likelihood of confusion with Stryker's Marks, makes Defendant's infringement willful and further makes this an exceptional case under 15 U.S.C. § 1117.

49.    Defendant's infringing use of a mark that is confusingly similar to Stryker's Marks has caused and continues to cause Stryker Corporation damages in an amount to be determined at trial and has caused and continues to cause Stryker Corporation irreparable harm in the form of at least loss of market share and loss of goodwill. Stryker Corporation has no adequate remedy at law against Defendant's acts of infringement, and, unless Defendant is enjoined from using the "Styker" mark, Stryker Corporation will continue to suffer irreparable harm.

50.    Stryker Corporation is entitled to recover from Defendant damages at least in an amount adequate to compensate for Defendant's infringement, which amount has yet to be determined.

**COUNT II**
**CYBERPIRACY (CYBERSQUATTING) UNDER THE ANTICYBERSQUATTING CONSUMER PREVENTION ACT (ACPA), 15 U.S.C. § 1125(d)**

51.    The allegations of the preceding paragraphs 1 through 50 are realleged and incorporated by reference as if fully set forth herein.

52.    Stryker Corporation owns valid and existing rights in Stryker's Marks. *See* paragraphs 15-16.

53.    Defendant has registered and uses the domain name <STYKER-ENDOSCOPY.COM>, which is identical or confusingly similar to Stryker's Marks, which were both distinctive and famous at the time Defendant registered its domain name.

54.    Defendant has a bad faith intent to profit from the goodwill and reputation symbolized by Stryker's Marks because Defendant intentionally diverts consumers from Stryker Corporation's online locations, including, but not limited to, <STRYKER.COM>, to Defendant's

site, which is accessible under <STYKER-ENDOSCOPY.COM>, thereby harming the goodwill represented by Stryker's Marks, either for commercial gain or with the intent to tarnish or disparage Stryker's Marks, by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of Defendant's website.

55.    Defendant further has a bad faith intent to profit from the goodwill and reputation symbolized by Stryker's Marks because Defendant has registered and/or acquired multiple domain names which Defendant knows are identical and/or confusingly similar to Stryker's Marks, which were distinctive and famous at the time of Defendant's domain name registration.

56.    The Panel in the ICANN Dispute determined that Defendant's use of the word "Styker" in the domain name <STYKERR.COM> was not a fair use or otherwise lawful use, so Defendant's subsequent use of another domain name with the word "Styker," <STYKER-ENDOSCOPY.COM>, cannot qualify as fair or lawful.

57.    Defendant's cybersquatting has caused and continues to cause Stryker Corporation damages in an amount to be determined at trial and has caused and continues to cause Stryker Corporation irreparable harm in the form of at least loss of market share and loss of goodwill. Stryker Corporation has no adequate remedy at law against Defendant's acts of cyberpiracy and cybersquatting, and, unless Defendant is enjoined from using the "Styker" mark in connection with domain name registrations, Stryker Corporation will continue to suffer irreparable harm.

58.    Stryker Corporation is entitled to recover from Defendant damages at least in an amount adequate to compensate for Defendant's cybersquatting, which amount has yet to be determined.

## <u>COUNT III</u>
## DECEPTIVE TRADE PRACTICES UNDER DELAWARE LAW, 6 DEL. C. § 2532 (a)

59.     The allegations of the preceding paragraphs 1 through 58 are realleged and incorporated by reference as if fully set forth herein.

60.     Defendant's actions, as described above, constitute deceptive trade practices because such actions, *inter alia*, create a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendant's goods and services, and create a likelihood of confusion or misunderstanding as to Defendant's affiliation, connection or association with or certification by Stryker Corporation, all in violation of 6 Del. C. § 2532 (a).

61.     Defendant has deliberately persisted in its infringing use of the "Styker" mark in connection with advertising of its goods and services despite its knowledge of a likelihood of consumer confusion and knowledge that its use is in bad faith. As such, Defendant's infringement and violation of 6 Del. C. § 2532 (a) is willful, warranting an assessment of costs and/or attorneys' fees against Defendant.

62.     Defendant's deceptive trade practices have caused and continue to cause Stryker Corporation damages in an amount to be determined at trial and have caused and continue to cause irreparable harm in the form of at least loss of market share and loss of goodwill. Stryker Corporation has no adequate remedy at law against Defendant's acts of infringement, and, unless Defendant is enjoined from using the "Styker" mark, Stryker Corporation will continue to suffer irreparable harm.

63.     Stryker Corporation is entitled to recover from Defendant damages at least in an amount adequate to compensate for Defendant's deceptive trade practices, which amount has yet to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Stryker Corporation prays for judgment as follows:

A.    A judgment that Defendant's use of the "Styker" mark infringes and has infringed Stryker Corporation's rights in the trademark STRYKER in violation of 15 U.S.C. 1114(1);

B.    A judgment that Defendant's use of the word "Styker" in its domain name constitutes and has constituted cyberpiracy and cybersquatting against Stryker Corporation's rights in the trademark STRYKER in violation of 15 U.S.C. § 1125(d);

C.    A judgment that Defendant's use of the word "Styker" has created liability to Stryker Corporation for deceptive trade practice under 6 DEL. C. § 2532 (a);

D.    An order pursuant to 15 U.S.C. § 1116 and/or 6 Del. C. § 2533(a), preliminarily and permanently enjoining Defendant and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from using the mark or name "Styker," or any colorable form thereof, in connection with any medical, surgical, or endoscopy products and services;

E.    An order pursuant to 15 U.S.C. § 1116 and/or 6 Del. C. § 2533(a), preliminarily and permanently enjoining Defendant and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from registering and/or using domain names with the mark or name "Styker," or any colorable form thereof;

F.    An order, in accordance with 15 U.S.C. § 1116, requiring Defendants to file with this Court and serve upon Stryker Corporation, within thirty (30) days after entry of the permanent injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

G.    An order, pursuant to 15 U.S.C. § 1118, that Defendant deliver up and destroy, or show proof of destruction of, all articles, products, displays, circulars, letterhead, business cards, literature, materials, labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the mark or name "Styker," or any colorable form thereof, and delete any and all electronic uses of the mark or name "Styker," or any colorable form thereof, under Defendant's control or under Defendant's authorization, including on electronic information, computer files, and/or websites;

H.    An award of damages to Stryker Corporation to which it is entitled under 15 U.S.C. § 1117 and/or 6 Del. C. § 2533 for Defendant's past infringement, cybersquatting, and unfair competition, and any continuing or future infringement, cybersquatting, and unfair competition, up until the date Defendants are finally and permanently enjoined from further use of the "Styker" mark, including compensatory damages;

I.    An award to Stryker Corporation of pre- and post-judgment interest on its damages;

J.    An award to Stryker Corporation of treble and/or enhanced damages under 15 U.S.C. § 1117 and/or 6 Del. C. § 2533, and any other applicable statutes or law, for Defendants' willful and intentional infringement;

K.    A declaration that this case is exceptional and an award to Stryker Corporation of its reasonable costs and expenses in this action, including reasonable attorneys' fees, under 15 U.S.C. § 1117 and/or 6 Del. C. § 2533, and any other applicable statutes or laws, including interest and costs; and

L.    An award to Stryker Corporation of such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and D. Del. LR 38.1, Stryker Corporation

hereby demands a jury trial on all issues so triable.


Dated: March 10, 2025                          Respectfully submitted,

OF COUNSEL:                                    FARNAN LLP

Patrick J. Arnold Jr.                          /s/ Michael J. Farnan
Manuel A. Franco                               Brian E. Farnan (Bar No. 4089)
McANDREWS, HELD & MALLOY, LTD.                 Michael J. Farnan (Bar No. 5165)
500 West Madison Street, Suite 3400            919 N. Market St., 12th Floor
Chicago, Illinois 60661                        Wilmington, DE 19801
(312) 775-8000                                 (302) 777-0300
parnold@mcandrews-ip.com                       (302) 777-0301 (Fax)
mfranco@mcandrews-ip.com                       bfarnan@farnanlaw.com
                                               mfarnan@farnanlaw.com

                                               *Attorneys for Plaintiff*
                                               *Stryker Corporation*